UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| KAMRUL CHOWDHURY,<br><br>    Plaintiff,<br><br> -against-<br><br>THE CITY OF NEW YORK, NEW YORK CITY POLICE DEPARTMENT (NYPD) SERGEANT JIM PAUL, NYPD OFFICER BRIANA NUNEZ, and NYPD OFFICERS JOHN and JANE DOE #1-5, in their individual capacities,<br><br>    Defendants. | Civil Action No. 23-9050<br><br>**COMPLAINT AND JURY DEMAND** |

Plaintiff Kamrul Chowdhury by and through his attorneys, Emery Celli Brinckerhoff Abady Ward & Maazel LLP and the Council on American-Islamic Relations New York Inc., for his Complaint alleges as follows:

## INTRODUCTION

1. "Don't move!" "Don't stand!" "Don't pray!" screamed an officer of the New York Police Department ("NYPD") as Kamrul Chowdhury attempted to silently pray while in NYPD custody. Mr. Chowdhury froze in silence. Too afraid to move, he could not pray. Later, without medication for his diabetes, Mr. Chowdhury asked for halal food to eat and received nothing more than two slices of white bread. Over and over again, despite Mr. Chowdhury's repeated requests for basic accommodations, NYPD officers—for over 24 hours—denied Mr. Chowdhury the ability to practice the basic tenets of his religion.

2. The NYPD arrested Plaintiff Kamrul Chowdhury, a practicing Muslim-American, based on a neighbor's Islamophobic allegations. But hostility towards Mr. Chowdhury's religion

did not end at his neighbor's doorstep. It continued during the entire time Mr. Chowdhury was in NYPD custody.

3. The NYPD denied Mr. Chowdhury the right to pray and to eat religiously compliant halal food for over 24 hours, during which time he was shuttled between the NYPD's 103rd precinct, courthouse, and the hospital where he was treated for diabetes symptoms arising from food deprivation.

4. As a Muslim, Mr. Chowdhury must pray five times a day, preceded by the ritual of ablution. While in NYPD custody, Mr. Chowdhury repeatedly requested a clean space to perform ablution and pray—prerequisites to complete the religious ritual. NYPD officers refused to provide these basic accommodations while at the precinct, the hospital, and the courthouse.

5. From his hospital bed, Mr. Chowdhury requested that the officers remove his hand cuffs so that he could make the movements required for prayer. The officers refused.

6. At the courthouse, Mr. Chowdhury attempted to pray quietly in the holding room. An officer screamed at him to stop praying and Mr. Chowdhury was again forced to forego his religious obligations.

7. But the NYPD's failure to uphold Mr. Chowdhury's religious rights was not limited to restrictions on prayer. After almost four hours in police custody, Mr. Chowdhury requested food and was presented with a non-halal hamburger. He explained that according to his religious beliefs, he could only eat halal food. The officers first refused to provide him with halal food altogether but, after hours of Mr. Chowdhury's insistence, they finally presented him with two slices of white bread.

8. Mr. Chowdhury is diabetic. After being refused proper nutrition in accordance with his religious beliefs, he was ultimately taken to the hospital because of a lack of food.

9. Mr. Chowdhury endured physical and emotional harm because of the NYPD officers' failure to accommodate his basic religious rights. The right to prayer and religiously compliant food is well established. These unnecessary and discriminatory acts are out of step with federal and state law, and the United States Constitution.

10. By denying Mr. Chowdhury the ability to pray and eat religiously compliant food, the NYPD imposed a substantial burden on his religious practice, violating the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc et seq. ("RLUIPA").

11. The NYPD's actions also contravene the First and Fourth Amendments to the United States Constitution; Article 1, Section 3 of the New York State Constitution; and New York State law.

12. By denying Mr. Chowdhury accommodations for his disability, the NYPD violated the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq* and the Rehabilitation Act of 1973, 29 U.S.C. § 701.

13. This civil rights action seeks damages and declaratory and injunctive relief to both compensate Mr. Chowdhury for the severe emotional damage he has suffered and to require the NYPD to adopt nondiscriminatory policies and practices to prevent encroachment on the religious rights of arrestees and detainees in the future.

**PARTIES**

14. Plaintiff Kamrul Chowdhury currently resides in Queens, New York.

15. Defendant City of New York (the "City") is a municipality organized and existing under the laws of the State of New York.  At all times relevant hereto, the City, acting through the New York, was responsible for the policy, practice, supervision, implementation, and conduct of all NYPD matters and was responsible for the appointment, training, supervision, and

conduct of all NYPD personnel.  In addition, at all relevant times, the City was responsible for enforcing the rules of the NYPD, and for ensuring that the NYPD personnel obey the laws of the United States and of the State of New York.

16. Defendant Sergeant Jim Paul was a police officer in the NYPD, acted toward Plaintiff under color of the statutes, ordinances, customs, and usage of the State of New York and the City of New York, and acted within the scope of his employment. He is sued in his individual capacity.

17. Defendant Officer Briana Nunez was a police officer in the NYPD, acted toward Plaintiff under color of statutes, ordinances, customs, and usage of the State of New York and the City of New York, and acted within the scope of her employment. She is sued in her individual capacity.

18. At all relevant times, Defendants NYPD Officers John and Jane Doe # 1-5 (the "Individual Defendants,"), names and shield numbers unknown to the plaintiff but known to the NYPD, were police officers in the NYPD, acted toward Plaintiff under color of the statutes, ordinances, customs, and usage of the State of New York and the City of New York, and acted within the scope of their employment. They are sued in their individual capacities. The Individual Defendants are being sued under fictitious names because their names are unknown to the Plaintiff at this time.

## JURISDICTION AND VENUE

19. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.  This Court has supplemental jurisdiction over the New York State law claim pursuant to 28 U.S.C. § 1367.

20. This case arises under the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc et seq., the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*, the Rehabilitation Act of 1973, 29 U.S.C. § 701, and the First, Fourth and Fourteenth Amendments to the United States Constitution.

21. The acts complained of occurred in the Eastern District of New York and venue is lodged in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and/or omissions giving rise to the claims occurred in the District.

## JURY DEMAND

22. Plaintiffs demand a trial by jury in this action.

## FACTUAL ALLEGATIONS

23. This case is about NYPD officers denying the religious rights of arrestees in their custody in violation of the First Amendment as well as other federal and state law.  NYPD officers refused Mr. Chowdhury the most basic of accommodations—a clean space to pray and halal food—for over 24 hours. When he attempted to pray anyway, he was scolded and told to stop. These actions lacked any justification and caused Mr. Chowdhury deep harm that continues to this day.

*Prayer*

24. Prayer is considered one of the "Five Pillars of Islam," and is a foundational aspect of the religion. Muslims are required to pray at five specified windows of time that punctuate the day. The first prayer takes place at dawn or *fajr*, followed by a prayer in the early

5

afternoon or *duhr*, the third is in the late afternoon or *asr*, the fourth is just after sundown or *maghrib*, and the final prayer is at night or *isha*.

25. Muslims are obligated to pray wherever they are and require only a small, clean space (usually a bathroom sink) to make ritual ablution and a clean space to perform the prayer itself.

26. "Wudu," or ritual ablution, is a condition for prayer and requires washing of the hands, face, ears, arms, hair, and feet. Wudu can be performed in a variety of ways. Many observant Muslims complete ritual ablution at a regular bathroom sink. When water is unavailable, Muslims are permitted to perform "tayammum" which is an act of dry ablution by tapping their hands on earth, sand, stone, or concrete.

27. Muslim prayer requires silent recitation of verses from the Quran and specific postures: standing, bowing, prostrating, and sitting—necessitating a clean space. A filthy space can invalidate prayer. Required prayers can last between five and fifteen minutes.

28. Many observant Muslims believe that prayer is the most important pillar of Islam, second only to the profession of faith. Missing a prayer is considered a grievous sin.

*Halal Food*

29. Observant Muslims also believe that only halal food is permissible to eat. "Halal" is an Islamic dietary law, which means "lawful or permitted." Foods that are not considered "halal" are prohibited to eat.

30. "Halal food" often refers to meat that has been slaughtered in accordance with Islamic principles. Pork can never be halal and is forbidden for Muslims to eat.

31. A vegetarian or vegan meal is also considered halal as long as it does not contain alcohol.

32. Halal food is widely available throughout New York. For example, like Kosher meals, halal food options are available in every New York City Public School. Hospitals also provide accommodations for halal diets.

33. For observant Muslims, halal food is not a matter of dietary preference or personal choice but is a fundamental aspect of faith. Eating halal food is considered an act of worship and is a religious obligation. Many observant Muslims consider the failure to eat halal food as sinful.

***The NYPD Arrests Mr. Chowdhury Based on Islamophobic Allegations***

34. Mr. Chowdhury is a 50-year-old driver from Queens, New York and a devout Muslim. Mr. Chowdhury prays five times a day, no matter where he is. When it is time to pray, Mr. Chowdhury does not accept passengers and stops at a mosque to complete his prayer.

35. Mr. Chowdhury has also observed a strictly-halal diet for his entire life.

36. Mr. Chowdhury often tries to share his religion with others by knocking on his neighbors' doors and offering an English-translation of his holy book, the Quran. Often, his neighbors will engage in conversation with him about his religion and other times, they will politely refuse his invitation and Mr. Chowdhury quietly moves on.

37. On September 11, 2022, Mr. Chowdhury left the mosque after completing the morning prayer and stopped by his neighbor's home to offer a translation of the Quran. Instead of engaging or politely refusing, his neighbor began a hostile tirade against Mr. Chowdhury, insulting his religion with foul language. Mr. Chowdhury calmly explained that he meant no offense and quietly returned home.

38. An hour or so later, NYPD Officer Briana Nunez and NYPD Officer John or Jane Doe approached Mr. Chowdhury outside his home based on his neighbor's allegations that Mr.

Chowdhury was "celebrating 9/11" and that Mr. Chowdhury menaced him with his cane. Mr. Chowdhury denied these allegations and urged the officers to look at the camera footage available outside his neighbor's home to confirm that he did not attack his neighbor. The officers ignored Mr. Chowdhury and arrested him in front of his wife, daughter, and sister.

***NYPD Officers Refuse Mr. Chowdhury's Religious Accommodations***

39. The NYPD took Mr. Chowdhury from his home to the 103rd precinct.

40. After four hours at the precinct, Mr. Chowdhury asked for a place to make ablution and a clean space to pray the early afternoon, or "duhr" prayer. NYPD Officer John or Jane Doe refused. In response to Mr. Chowdry's request, the NYPD Officer John or Jane Doe said that there was no such space.

41. Without a clean space to perform ablution and the required movements, Mr. Chowdhury missed the early afternoon prayer.

42. The bathroom sink for arrestees was dirty and did not dispense enough water for Mr. Chowdhury to make the ablution required for prayer.

43. Similarly, Mr. Chowdhury's cell was filthy, littered with trash, dirt, and spilled water which would invalidate his prayer.

44. Having been in custody for over five hours, Mr. Chowdhury requested food from the officers. An officer returned with a meat hamburger from McDonalds. Mr. Chowdhury explained that he could not eat the burger because it was not halal and requested halal food.

45. NYPD Officer John or Jane Doe refused, stating that there was no halal food and no one was available to buy him halal food. Mr. Chowdhury went hungry.

46. When it was time for the late-afternoon, or "asr" prayer, Mr. Chowdhury again requested a place to make ablution and a clean space to pray. Again, he was refused. Without a

place to clean himself, Mr. Chowdhury performed "tayammum" or dry ablution by tapping on the wall of his cell.

47. Then, as he stood to perform the prayer, an officer immediately yelled at Mr. Chowdhury to sit down. The officer refused to let Mr. Chowdhury stand to pray. Mr. Chowdhury was forced to try to complete his prayer while seated on a bench in his cell. He was not able to make the traditional movements his faith requires: standing, prostration and sitting.

48. By this point, Mr. Chowdhury had not eaten for almost seven hours. He begged the NYPD for any kind of halal food. NYPD Officers John or Jane Doe relented and finally provided Mr. Chowdhury with two slices of white bread.

49. Aside from these two slices of white bread, Mr. Chowdhury was not provided with any halal food for the entirety of his over-24 hours in NYPD custody.

50. When it was time for the sunset, or "maghrib" prayer, Mr. Chowdhury again performed dry ablution and prayed silently, seated in his cell. He was too intimidated by the NYPD's harassment to attempt to fully pray in accordance with his faith. Again, he was unable to make ablution with water and was unable to make the movements necessary for prayer.

51. Without food or medicine, Mr. Chowdhury's conditions were rapidly deteriorating. As a diabetic, he needed to maintain his blood sugar. Mr. Chowdhury was ultimately rushed to New York City Health and Hospitals, Queens for a medical emergency.

52. Mr. Chowdhury was admitted there for almost five hours, during which time Mr. Chowdhury needed to pray the night, or "isha" prayer. While hand-cuffed to the hospital bed, Mr. Chowdhury requested that NYPD Officer John or Jane Doe loosen or remove his hand and ankle-cuffs so that he could make ablution and complete the required movements for prayer. The officers refused.

9

53. Mr. Chowdhury prayed the night prayer silently in his hospital bed, without the required ablution and without the ability to make any of the movements required for his prayer.

54. On or around midnight, Mr. Chowdhury was transported back to the precinct. When it was time for the dawn, or "fajr" prayer the next day, Mr. Chowdhury performed dry ablution and prayed seated in his cell. Again, he was not able to perform the required ablution or the movements required for prayer.

55. The next day, Mr. Chowdhury was transported to Queens Criminal Court for a hearing. While waiting in a holding area, Mr. Chowdhury quickly performed ablution using a sink near the holding room and attempted to pray the early afternoon duhr prayer. When he stood to begin his prayer, NYPD Officer John or Jane Doe began to scold him, yelling "don't move," "don't stand," and "don't pray." Mr. Chowdhury sat down and stopped praying altogether, too afraid to move. Mr. Chowdhury missed the early afternoon prayer.

***NYPD Officers Refuse Mr. Chowdhury Accommodations for his Disability***

56. Mr. Chowdhury takes prescribed medication twice a day to manage his diabetes. This has been his regiment for many years.

57. Soon after his arrest, Mr. Chowdhury told the Defendant officers at the precinct that he was feeling sick and has diabetes. An officer responded, "Don't say anything about it during arraignment, or it will delay your release by more than a day."

58. Officers at the precinct performed a blood glucose test on Mr. Chowdhury during processing.

59. Mr. Chowdhury was unable to take his prescribed medication until he was rushed to the hospital after eating nothing but two slices of white bread all day.

60. Mr. Chowdhury was unable to take his prescribed medication until the next afternoon, when he finally returned home.

***Mr. Chowdhury Suffered and Continues to Suffer Emotional and Physical Harm from the NYPD's Treatment***

61. Mr. Chowdhury is deeply traumatized from what he experienced in NYPD custody. He feels nervous and afraid whenever he goes outside and is afraid to speak to people, fearing hostility because of his religion.

62. Mr. Chowdhury suffered marks and bruising on his wrists from the tight handcuffs.

63. Mr. Chowdhury still experiences headaches and stress because of what he experienced.

***The NYPD Officers Violated Mr. Chowdhury's Religious Rights***

64. The First Amendment prohibits unreasonable interference with the religious rights of individuals.

65. Federal legislation has been enacted to further demonstrate the robust national commitment to the free exercise of religion and to prohibit the government from placing a substantial burden on religious beliefs. This legislation, which reflects an increased awareness of and support for religious interests in practices like prayer and religiously compliant meals, "shall be construed in favor of a broad protection of religious exercise, to the maximum extent permitted by . . . the Constitution." 42 U.S.C. § 2000cc-3(g). The statute even "may require a government to incur expenses in its own operations to avoid imposing a substantial burden on religious exercise." Id. § 2000cc-3(c).

66. In contravention of this longstanding legislation and the tolerant, inclusive policies it embodies, NYPD officers repeatedly refused to accommodate Mr. Chowdhury's religious practice while he was in custody.

67. The City either knew or should have known that the Individual Defendants were likely to engage in the unlawful interference of religious rights.

***Mr. Chowdhury Timely Filed a Notice of Claim***

68. Within ninety days after Mr. Chowdhury's September 11, 2022 arrest, counsel for Mr. Chowdhury filed a Notice of Claim with the New York City Comptroller's Office.

69. Mr. Chowdhury attended and testified at the hearing required under Section 50-H of the General Municipal Law on March 17, 2023.

70. This action has been commenced within one year and ninety days after the happening of the event upon which the claim is based.

### FIRST CAUSE OF ACTION
### The Religious Land Use and Institutionalized Persons Act
### Against the Individual Defendants
### (42 U.S.C. § 2000cc)

71. Plaintiff repeats and realleges the above paragraphs as if the same were fully set forth at length herein.

72. RLUIPA provides, in relevant part: "No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that the imposition of the burden on that person- (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a)(1)-(2).

73. Plaintiff is a "person[]" as defined under the RLUIPA. See 42 U.S.C. § 2000cc-1(a) and 42 U.S.C. § 1997(3).

74. Plaintiff's need to pray and eat halal food constitutes sincerely-held religious beliefs.

75. At all relevant times, Defendants met the definition of the term "government" under the RLUIPA. See 42 U.S.C. § 2000cc-5(4)(A)(i)-(iii).

76. At all relevant times, Plaintiff was in NYPD custody. The locations where Plaintiff was detained including, but not limited to NYPD's 103rd Precinct at 168-02 91st Ave, Queens, NY 11432, Queens County Criminal Court at 125-01 Queens Blvd, Queens, NY 11415 and NYC Health and Hospitals, Queens at 82-68 154th Street Queens, NY 11432, respectively (the "City Institutions"), where the events alleged in the complaint transpired, are federally-funded "institutions" as defined under the RLUIPA and the Civil Rights of Institutionalized Persons Act of 1980 ("CRIPA"), 42 U.S.C. § 1997(1)(B)(ii)-(iii).

77. At all relevant times, Plaintiff was "residing in or confined to institutions" as defined under the RLUIPA when the events alleged above transpired.

78. Defendants' acts or omissions, policies, and customs substantially burdened Plaintiff's religious exercise by denying him and in one case, forbidding him from completing prayer and denying him halal food while he was residing in or confined to the City Institutions.

79. Defendants' acts or omissions, policies, and customs do not further a compelling government interest.

80. Defendants' acts or omissions, policies, and customs are not the least-restrictive means of furthering a compelling government interest.

81. As a direct and proximate result of Defendants' wrongful acts and omissions, Plaintiff has sustained damages, and has suffered and continues to suffer mental anguish, physical and emotional distress, humiliation, and embarrassment.

## SECOND CAUSE OF ACTION
### Free Exercise Clause
### Against the Individual Defendants
### (42 U.S.C. § 1983)

82. Plaintiff repeats and realleges the above paragraphs as if the same were fully set forth at length herein.

83. 42 U.S.C. § 1983 prohibits any person acting under color of state law, custom, or usage to deprive a citizen of rights secured by the Constitution.

84. At all relevant times, Defendants acted under color of state law.

85. Under the First Amendment to the Constitution of the United States of America, Plaintiff has the right to freely exercise his religion.

86. By denying Plaintiff the ability to pray, or failing to prevent others from doing so, Defendants deprived Plaintiff of his right to freely exercise his religion in contravention of the Free Exercise Clause.

87. By denying Plaintiff halal food, or failing to prevent others from doing so, Defendants deprived Plaintiff of his right to freely exercise his religion in contravention of the Free Exercise Clause.

88. As a direct and proximate result of Defendants' unlawful discriminatory conduct, Plaintiff has sustained damages and has suffered and continues to suffer mental anguish, physical and emotional distress, humiliation, and embarrassment.

## THIRD CAUSE OF ACTION
### 42 U.S.C. § 1983/*Monell*
### Against the City of New York

89. Plaintiff repeats and realleges the above paragraphs as if the same were fully set forth at length herein.

90. The foregoing violations of Plaintiff's First Amendment constitutional rights and injuries were further directly, foreseeably, proximately, and substantially caused by conduct chargeable to Defendant City, amounting to deliberate indifference to the constitutional rights of persons, including Plaintiff, who are arrested by the NYPD.

91. Defendant City failed to provide adequate training or supervision to subordinate officers to such an extent that it amounts to deliberate indifference to the religious rights of persons, including Plaintiff, who come in contact with NYPD officers.

## FOURTH CAUSE OF ACTION
### New York State Constitution, Article I, Section 3
### Against All Defendants

92. Plaintiff repeats and realleges the above paragraphs as if the same were fully set forth at length herein.

93. Article I, Section 3 of the Constitution of the State of New York provides that: "The free exercise and enjoyment of religious profession and worship, without discrimination or preference, shall forever be allowed in this state to all humankind."  McKinney's Const. Art. 1, § 3.

94. Defendants' denial of prayer and halal food violates Article I, Section 3 by disallowing the free exercise of religion.

15

95. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has sustained damages and has suffered and continues to suffer mental anguish, physical and emotional distress, humiliation, and embarrassment.

### FIFTH CAUSE OF ACTION
### 42 U.S.C. § 1983/Fourth Amendment/Excessive Force
### Against the Individual Defendants

96. Plaintiff repeats and realleges the above paragraphs as if the same were fully set forth at length herein.

97. By abusively shackling Plaintiff so tightly that it bruised his wrists or failing to prevent others from doing so, the Defendant Officers used unreasonable and excessive force under the circumstances they confronted. Plaintiff posed no threat and only requested loosening or removal of his handcuffs so that he could fulfill his religious obligations.

98. At all relevant times, the Defendant Officers acted under color of state law within the scope of their employment as police officers for the NYPD.

99. As a direct and proximate result of the Defendants' conduct, Plaintiff sustained the damages alleged herein.

### SIXTH CAUSE OF ACTION
### Negligent Training and Supervision Under New York Law;
### Against the City of New York

100. Plaintiff repeats and realleges the above paragraphs as if the same were fully set forth at length herein.

101. By virtue of the foregoing, Defendant City of New York is liable to Plaintiff because of its intentional, deliberately indifferent, careless, reckless, and/or negligent failure to adequately supervise its officers employed by the NYPD with regard to the aforementioned constitutional and statutory duties to arrestees in their custody.

## SEVENTH CAUSE OF ACTION
### Battery
### Against All Defendants

102. Plaintiff repeats and realleges the above paragraphs as if the same were fully set forth at length herein.

103. By reason of the foregoing, and by restraining Plaintiff's hands and legs, Defendants, acting in their capacity as NYPD officers within the scope of their employment as such, committed a willful, unlawful, unwarranted, and intentional battery upon Plaintiff.

104. Defendant City, as employer of Defendants is responsible for the wrongdoing of Defendant Officers John and Jane Doe # 1-5 under the doctrine of *respondeat superior*.

105. As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages hereinbefore alleged.

## EIGHTH CAUSE OF ACTION
### Violation of Title II of the Americans with Disabilities Act
### 42 U.S.C. § 12101, *et seq.*; Against the City of New York

106. Plaintiff repeats and realleges the above paragraphs as if the same were fully set forth at length herein.

107. Mr. Chowdhury has diabetes and is a qualified person with a disability.

108. Mr. Chowdhury's disability was known to Defendant Officers because he reported his diabetes to NYPD officers shortly after his arrest.

109. At all times, the NYPD precinct was a federally-funded institution and bound to comply with Title II of the Americans with Disabilities Act ("ADA").

110. Mr. Chowdhury requested and was denied reasonable accommodations in the form of food and medication while he was in NYPD custody, causing him to suffer greater injury and indignity.

## NINTH CAUSE OF ACTION
### Violation of Section 504 of the Rehabilitation Act of 1973
### 29 U.S.C. § 701, *et seq.*; Against the City of New York

111. Plaintiff repeats and realleges the above paragraphs as if the same were fully set forth at length herein.

112. Mr. Chowdhury has diabetes and is a qualified person with a disability.

113. Mr. Chowdhury's disability was known to Defendant Officers because he reported his diabetes to NYPD officers shortly after his arrest.

114. At all times, the NYPD precinct was a federally-funded institution and bound to comply with Section 504 of the Rehabilitation Act prohibiting discrimination against individuals with disabilities.

115. Defendant NYPD Officers failed to provide reasonable accommodations in the form of food and medication while he was in NYPD custody, causing him to suffer greater injury and indignity.

## TENTH CAUSE OF ACTION
### Declaratory Judgment (Fed. R. Civ. P. 57 and 28 U.S.C. §§ 2201-02)
### Against All Defendants

116. Plaintiff repeats and realleges the above paragraphs as if the same were fully set forth at length herein.

117. Defendants' conduct was intentional and made with reckless indifference to Plaintiff's religious rights.

118. Plaintiff's rights to the free exercise of religion were infringed upon and substantially burdened by Defendants' conduct.

119. Defendants' conduct disallowing prayer and the provision of halal food is an unlawful and unconstitutional practice that infringes upon the rights of Plaintiff to freely exercise their religion without the interference of substantially burdensome government conduct.

120. Plaintiff is entitled to a declaratory judgment that Defendants infringed upon and substantially burdened Plaintiff's religious free exercise in violation of federal and state law and the United States Constitution.

121. Plaintiff has a strong likelihood of succeeding on the merits of his claims.

WHEREFORE, Plaintiff Kamrul Chowdhury respectfully request judgment against Defendants as follows:

a) Declaring that Defendants' discriminatory practices violate the RLUIPA, 42 U.S.C. § 2000cc *et seq.*; the Free Exercise Clause of the First Amendment to the United States Constitution; and Article 1, Section 3 of the New York State Constitution;

b) Requiring Defendant to adopt nondiscriminatory policies and practices to prevent encroachment on the religious rights of arrestees and detainees in the future;

c) Awarding such damages to Plaintiff as will fully compensate him for his loss of rights and emotional distress suffered due to Defendants' unlawful conduct;

d) Awarding punitive damages to Plaintiff against the individual Defendants;

e) Awarding Plaintiff reasonable attorneys' fees, costs, and expenses incurred in prosecuting this action; and

f) Granting Plaintiff such other further relief as may be just and proper.

Dated: New York, New York
December 8, 2023

                                              EMERY CELLI BRINCKERHOFF
                                              ABADY WARD & MAAZEL LLP

                                              By: _____
                                                  O. Andrew F. Wilson
                                                  Sana Mayat
                                                  600 Fifth Avenue, 10th Floor
                                                  New York, New York 10020
                                                  (212) 763-5000

                                              COUNCIL ON AMERICAN-ISLAMIC
                                              RELATIONS NEW YORK, INC.

                                                  Lamya Agarwala*
                                                  Brendan "Burhan" Carroll*
                                                  46-01 Twentieth Avenue
                                                  Queens, New York 11105
                                                  (646) 665-7599

                                              *Attorneys for Kamrul Chowdhury*

                                              *Application for admission forthcoming